FILED IN OPEN COURT
U.S.D.C. - Atlanta

MAR 24 2025

KEVIN P. WEIMER, Clerk
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM JOHNSON | Criminal Information<br><br>No. 1:25-CR-107 |

THE UNITED STATES ATTORNEY CHARGES THAT:

**Count One**
**(Conspiracy to Commit Wire Fraud)**
**18 U.S.C § 371**

1. Beginning in or about July 2020, and continuing through in or about December 2021, in the Northern District of Georgia and elsewhere, the Defendant, WILLIAM JOHNSON, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with others known and unknown, to commit an offense against the United States, namely, to defraud the Small Business Administration ("SBA") by knowingly devising and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omissions of material fact, and for the purpose of executing this scheme, causing wire communications to be transmitted in interstate commerce, in violation of Title 18, United States Code, Section 1343.

**The Small Business Administration**

2. During the relevant time period, the SBA was an executive branch agency of the United States that provided support to entrepreneurs and small

businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

3. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans were guaranteed by the government.

## Economic Impact Disaster Loan Program

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and was designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

5. The CARES Act created the Economic Impact Disaster Loan ("EIDL") Program to provide economic relief to small businesses with 500 or fewer employees. EIDL proceeds could be used to pay debts, payroll, accounts payable, and other bills that could not be paid because of the impact of COVID-19. The SBA administered the EIDL Program.

6. An EIDL applicant was required to provide, among other information, the amount of revenue the business generated in the 12 months prior to the application and the number of employees. The applicant had to certify, under penalty of perjury, that the information was correct and that he or she was legally eligible to apply for an EIDL.

7. As part of an EIDL application, an applicant could request and receive up to $10,000 as an EIDL Cash Advance Grant based on the number of employees

claimed by the applicant. In general, the SBA authorized payments of $1,000 in EIDL Cash Advance Grants for each employee claimed by a company. Payments of EIDL Cash Advance Grants to applicants occurred before receipt of any SBA loan. The EIDL Cash Advance Grants were intended to be upfront payments of EIDL funds to applicants to be used for the specific purposes set forth in paragraph 5.

### Relevant Entities

8. During the relevant time period, Troy Byson Logistics LLC, a trailer transportation business, was a shell company that Defendant JOHNSON used for the purpose of applying for CARES Act loans. It was registered with the Georgia Secretary of State and listed its principal business address as a location on Baker Terrace, in Atlanta, Georgia. Troy Byson Logistics LLC maintained a Wells Fargo bank account ending 6200. Defendant JOHNSON was the sole authorized signatory on the account.

9. During the relevant time period, Company 1, an agricultural company, was a shell company controlled by Co-Conspirator 1. Its principal business address was a location on Godfrey Drive, in Atlanta, Georgia. Co-Conspirator 1 maintained a Wells Fargo bank account ending 2988 and was the sole authorized signatory on the account.

### Manner and Means

10. Defendant JOHNSON, conspiring with others known and unknown, including Co-Conspirator 1, submitted false and fraudulent EIDL loan applications for Troy Byson Logistics LLC and Company 1 in order to obtain

EIDL loans, totaling over $300,000. The fraudulent applications contained misrepresentations regarding the number of employees and the gross revenue of the businesses. Troy Byson Logistics LLC and Company 1 were not eligible to receive EIDL loans.

## Overt Acts

11. In furtherance of the conspiracy, and to effect the objects and purposes thereof, Defendant JOHNSON and Co-Conspirator 1 committed the following overt acts, among others, within the Northern District of Georgia:

12. On or about July 21, 2020, Defendant JOHNSON applied for a $150,000 EIDL loan on behalf of Troy Byson Logistics LLC. In the loan application, Defendant JOHNSON falsely claimed that Troy Byson Logistics LLC had 14 employees and gross revenues of $420,000 over the preceding 12-month period.

13. After the SBA deposited $149,000 into Troy Byson Logistics' Wells Fargo account ending 6200, Defendant JOHNSON transferred $144,446 to his personal Wells Fargo account ending 8455.

14. On or about July 29, 2020, Defendant JOHNSON and Co-Conspirator 1 applied for a $150,000 EIDL loan on behalf of Company 1. In the loan application, Defendant JOHNSON and Co-Conspirator 1 falsely claimed that Company 1 had 24 employees and gross revenues of $375,000 over the preceding 12-month period.

15. After the SBA deposited $149,900 into Co-Conspirator 1's Wells Fargo account ending 2988, Co-Conspirator 1 wired $139,900 into a J.P. Morgan Chase

account ending 3608, an account controlled by Defendant JOHNSON and Co-Conspirator 1.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE

16. Upon conviction of the offense alleged in Count One of this Information, the Defendant, WILLIAM JOHNSON, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including, but not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in Count One of this Information.

17. If, as a result of any act or omission of the Defendant, any property subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section

853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any property of the Defendant up to the value of the forfeitable property.

RICHARD S. MOULTRIE, JR.
*Acting United States Attorney*

*/s/ Diane C. Schulman*
DIANE C. SCHULMAN
*Special Assistant United States Attorney*
Georgia Bar No. 49776

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181